**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3772-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AFRIM TAIRI,

    Defendant-Appellant.

_____

> Argued October 29, 2024 – Decided November 20, 2024
>
> Before Judges Gilson, Firko, and Augostini.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 01-06-1503.
>
> Ernesto Cerimele argued the cause for appellant (Klingeman Cerimele, attorneys; Henry E. Klingeman and Ernesto Cerimele, on the briefs).
>
> K. Charles Deutsch, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; K. Charles Deutsch, of counsel and on the brief).

PER CURIAM

Defendant Afrim Tairi appeals from a June 22, 2023 order denying his second petition for post-conviction relief (PCR) seeking a new trial based on an alleged Brady[1] violation without an evidentiary hearing.  Defendant claims the State violated its obligation under Brady when it failed to produce a sworn petition for habeas corpus filed by co-defendant Edwin Torres.  Defendant also alleged trial counsel was ineffective by failing to uncover Torres's habeas corpus petition earlier.  Defendant claims he would have used Torres's habeas corpus petition to impeach his trial testimony.  We reject those arguments and affirm.

I.

The parties are familiar with the facts, which were described in our prior opinions, including:  State v. Tairi (Tairi I), No. A-2684-09 (App. Div. Feb. 16, 2010) (slip op. at 4-17), where we affirmed defendant's conviction and sentence, but remanded for entry of an amended judgment of conviction to vacate the Law Enforcement Officers' Training and Equipment Fund fee; and State v. Tairi (Tairi II), No. A-1016-19 (App. Div. July 15, 2022) (slip op. at 2-5), in which we initially affirmed the denial of defendant's first petition for PCR following an evidentiary hearing but then later remanded the matter to the Law Division

---

[1]  Brady v. Maryland, 373 U.S. 83 (1963).

to continue the hearing to permit defendant to call Torres as a witness. We need only summarize the facts relevant to this appeal.

Defendant, Torres, and another co-defendant Felix DeJesus, now deceased, were charged with three separate home invasions that took place in 1995. One invasion resulted in a victim being murdered. Following a lengthy investigation, Torres and DeJesus were arrested for murder, robbery, and related charges. On July 30, 1996, a warrant for defendant's arrest was issued after they provided statements as to what happened and who was involved. Defendant fled the country while Torres and DeJesus were tried and convicted in 1998 and 1999 respectively. On December 1, 2006, defendant was located and extradited back to New Jersey.

Upon his return, defendant was charged under Indictment No. 01-06-1503 with one count of first-degree kidnapping in violation of N.J.S.A. 2C:13-1(a); one count of second-degree kidnapping by holding for other purposes in violation of N.J.S.A. 2C:13-1(b); one count of second-degree and one count of third-degree receiving stolen property in violation of N.J.S.A. 2C:20-7; two counts of second-degree burglary in violation of N.J.S.A. 2C:18-2; two counts of first-degree and one count of second-degree robbery in violation of N.J.S.A. 2C:15-1; one count of second-degree assault in violation of N.J.S.A. 2C: 12-

3

1(b)(1); two counts of second-degree possession of a weapon for an unlawful purpose in violation of N.J.S.A. 2C:39-4(a); one count of first-degree murder in violation of N.J.S.A. 2C:11-3(a) (1) or (2); one count of first-degree murder in violation of N.J.S.A. 2C:11-3(a)(3); one count of third-degree theft by unlawful taking or disposition in violation of N.J.S.A. 2C:20-3; one count of second-degree conspiracy in violation of N.J.S.A. 2C:5-2; and one count of fourth-degree credit card theft in violation of N.J.S.A. 2C:21-6(c).

On August 3, 2008, Torres filed a sworn petition for habeas corpus seeking relief based on ineffective assistance of counsel. Torres's petition alleged in part: "Counsel on the initial PCR ignored [his] request to investigate claims that [his] co-defendant would have submitted an affidavit on his behalf, which would have explained that [he] had no knowledge of the Staten Island robbery and kidnapping of Lenny Theodoulou." Torres asserted that it was "now too late because [his] co-defendant (DeJesus) passed away due to cancer."

In 2009, defendant was tried before a jury. Pertinent here, Torres testified against defendant and placed him at the scene of each home invasion. The jury found defendant guilty on all counts. On January 12, 2012, defendant was sentenced to a term of life imprisonment plus eighty years, with a seventy-year period of parole ineligibility.

4

In our opinion on defendant's direct appeal, we found that Torres's testimony—although questionable in certain respects—was "corroborated in many details by the victims of the crimes, other physical evidence, and by the testimony of Marisol Melton,[2] which circumstantially established defendant's active involvement in the criminal enterprise." We ultimately held that "the testimony taken as a whole was sufficient to establish defendant's guilt of the charges beyond a reasonable doubt, and the judge properly denied his motion to set aside the jury's verdict." Tairi I, No. A-2684-09 (slip op. at 24-26). On July 12, 2012, our Supreme Court denied certification. State v. Tairi, 211 N.J. 608 (2012).

## A. First PCR Petition

Thereafter, defendant filed his first PCR petition. He asserted claims of ineffective assistance of trial and appellate counsel, and prosecutorial misconduct that denied him due process and a fair trial. Defendant also requested an evidentiary hearing. On March 20, 2013, defendant's requested relief was denied without an evidentiary hearing. Defendant appealed from the order denying his first PCR petition.

---

[2] Marisol Melton is DeJesus's sister, and was Torres's girlfriend at the time of the home invasions.

A-3772-22

On appeal, defendant argued that the first PCR court abused its discretion by denying defendant's motion seeking the court's recusal and by denying PCR counsel's request for additional time to prepare and file his brief. We reversed and remanded for a new PCR hearing, stating:

> PCR counsel was unable to fully investigate and assess the trial record for potential claims for relief, and was unable to have meaningful discussion with his client regarding the State's opposition to the brief that he did file. These limitations, imposed not by PCR counsel's ineffective assistance, but rather by the mistaken exercise of judicial discretion, cut to the core obligations our [c]ourt has imposed upon PCR proceedings, specifically to assure fairness and that a defendant receives effective assistance of counsel on PCR. The appropriate remedy in these circumstances is a remand for a new PCR hearing.
>
> State v. Tairi, No. A-1560-13 (App. Div. Mar. 3, 2016) (slip. op at 10-11).

On remand, defendant filed another PCR petition and a motion for new trial based upon newly discovered evidence. Defendant alleged that the affidavit of Steven Kadonsky dated September 14, 2012—a fellow inmate who provided services as a "jailhouse lawyer"—supported defendant's contention that he is innocent of the crimes for which he had been convicted. Specifically, defendant asserted there were three hearsay statements involved in this petition: two statements made by DeJesus, and one statement made by Torres.

6

According to defendant, these three statements would have been admissible at trial and would have been exculpatory because DeJesus and Torres allegedly told Kadonsky that they "framed" defendant. Also, on page forty-seven of defendant's brief in support of his PCR petition, defendant acknowledged the existence of a petition for habeas corpus filed by Torres in 2008:

> Torres was . . . confined at the New Jersey State Prison since 1999. Torres and Mr. Kadonsky became friends. Approximately three years after the death of DeJesus, Torres asked Mr. Kadonsky to help prepare his [p]etition for [h]abeas [c]orpus to be filed in the United States District Court for the District of New Jersey.
>
> [(emphasis added).]

On October 10, 2018, following remand, defendant's first PCR petition was denied without an evidentiary hearing. Then, on October 26, 2018, defendant filed a motion for reconsideration that asserted an evidentiary hearing was warranted based on "newly discovered evidence," specifically Kadonsky's affidavit. On March 21, 2019, defendant's motion for reconsideration was granted, in part, and, the second PCR court conducted an evidentiary hearing that was limited strictly to the contents of the Kadonsky affidavit.

Later that same day following the evidentiary hearing, the second PCR court denied PCR. The second PCR court first noted that "based on his

7

demeanor and testimony provided, [it] did not find Kadonsky to be a credible witness, and further, that his testimony did not add any new information to what had been previously submitted in his affidavits." The second PCR court "found it significant that there were four separate cases cited by the State where Kadonsky provided affidavits, and those [c]ourts found Kadonsky to be unreliable." The second PCR court concluded defendant's argument failed under all three prongs of the Carter[3] test.

On November 7, 2019, defendant filed a notice of appeal arguing, in part, that the second PCR court should have afforded him an opportunity to examine Torres at an evidentiary hearing. On January 19, 2021, this court affirmed the denial of defendant's petition for PCR. State v. Tairi, No. A-1016-19 (App. Div. Jan. 19, 2021) (slip. op at 1-6, 12). However, on March 3, 2021—after defendant filed another motion for reconsideration—we vacated our decision and remanded the matter to the Law Division to continue the evidentiary hearing for the limited purpose of permitting defendant to call Torres as a witness.

---

[3] The test for newly discovered evidence entitling a party to a new trial consists of three factors: "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." State v. Carter, 85 N.J. 300, 314 (1981).

B. Evidentiary Hearing Following Remand on First PCR Petition

Following remand and relevant to this appeal, Torres testified at the July 27, 2021 evidentiary hearing that he paid Kadonsky to prepare the 2008 habeas corpus petition for him. Torres explained on cross-examination:

> Prosecutor: These ideas [in the habeas corpus petition] were from [Kadonsky], not from you?
>
> Torres: Correct.
>
> Prosecutor: And one of the major points of this habeas corpus is that the Staten Island conduct did not fall in the jurisdiction of the New Jersey court, correct?
>
> Torres: Correct.
>
> Prosecutor: And that was his idea, not yours, right?
>
> Torres: Right.
>
> Prosecutor: So, Mr. Kadonsky was advising you as to how to proceed with your habeas corpus.
>
> Torres: Correct.
>
> Prosecutor: While it's in your handwriting, none of these ideas came from you, is that correct?
>
> Torres: Correct.
>
> Prosecutor: And Mr. Kadonsky's idea was to get an affidavit from a dead guy; right?
>
> Torres: Correct.

A-3772-22

Prosecutor: And that was supposed to help you in court.

Torres: Correct.

Prosecutor: So, one of the services that Mr. Kadonsky provided you was advice to obtain an affidavit; correct?

Torres: Correct.

Prosecutor: That could not be verified.

Torres: Correct.

Prosecutor: To help you in court.

Torres: Correct.

. . .

Prosecutor: Now, at no point in your petition for habeas corpus did you say you were not present?

Torres: Correct.

Prosecutor: You simply said that the affidavit would be from DeJesus that you had no knowledge of the Staten Island robbery.

Torres: Correct

Prosecutor: And this was pertaining specifically to the Staten Island robbery because Mr. Kadonsky advised you to raise a jurisdiction issue, correct?

Torres: Correct.

. . .

10

Prosecutor: And at no point in this document did you say that [defendant] was not a party to those crimes; is that correct?

Torres: Correct.

Prosecutor: Did you ever tell Steven Kadonsky that [defendant] was not present during any of these crimes?

Torres: No.

Prosecutor: Was [defendant] present during the Teaneck robbery and homicide?

Torres: Correct.

Prosecutor: Was he present in Englewood Cliffs?

Torres: Yes.

Prosecutor: Was he present in Staten Island?

Torres: Yes.

On September 29, 2021, defendant filed a supplemental brief with this court arguing that Torres's 2008 habeas corpus petition was "new evidence" that justified granting defendant a new trial under Carter. Defendant asserted that Torres was not credible because Torres stated he did not have knowledge of the Staten Island robbery and kidnapping of Lenny Theodoulou in his petition.

However, Torres testified at defendant's trial that he did have knowledge of the Staten Island incident. Defendant contended that Torres's recantation of

11

his trial testimony significantly undermined his credibility, bias, and motive, and constitutes the type of evidence that would change the jury's verdict. Defendant maintained this was crucial to his case as Torres's "testimony alone resulted in [defendant]'s conviction."

C. Second PCR Petition

In a November 1, 2021 letter brief, defendant also raised—for the first time—the argument that the State violated <u>Brady</u> and <u>Giglio</u>[4] when it failed to produce Torres's 2008 habeas petition. Defendant argued that because the State withheld the petition, he was unable to confront Torres with it and the jury was ignorant of its existence, much less its significance.

On November 17, 2021, the second PCR court concluded a new trial was not warranted because the <u>Carter</u> standard was not satisfied. The second PCR court first found that Torres—while having admitted to submitting false statements to a court on one occasion—provided consistent and candid testimony at the evidentiary hearing and was thus a "credible" witness. The second PCR court supported its conclusion by noting "Torres's testimony at [defendant]'s trial in October 2009, his affidavit from July 2018, and his testimony at the evidentiary hearing on July 27, 2021, [were] all consistent."

---

[4] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

The second PCR court also found significant, that during the July 27, 2021 evidentiary hearing, Torres was forthcoming about his efforts to introduce the false affidavit for his habeas corpus petition. The PCR court held the jury was aware of Torres's inconsistent testimony, yet still found defendant guilty.

Furthermore, the second PCR court acknowledged defendant's argument that Torres lies under oath also implicated Kadonsky—defendant's own witness—because Kadonsky certified that he prepared Torres's petition for habeas corpus. The second PCR court highlighted that it previously found Kadonsky lacked credibility as a witness.

The second PCR court analyzed the three-prong test under Carter. The second PCR court determined defendant failed to satisfy prong one of the Carter test because the newly discovered evidence must be material to the issue and not merely cumulative, impeaching, or contradictory. The second PCR court found the habeas corpus petition touched on Torres's advanced knowledge of one of the crimes, and not defendant's culpability for those crimes. Thus, the newly discovered evidence was not material but impeaching.

Regarding prong two of the Carter analysis—the newly discovered evidence must be discovered subsequent to the trial and was not discoverable by reasonable diligence beforehand—the second PCR court determined Torres's

false statements were submitted in 2008 in his habeas corpus petition; therefore, defendant "had ample opportunity to raise the issue presented by this evidence on appeal and in his first PCR petition for [PCR]."

The second PCR court finally determined defendant failed prong three of the Carter analysis—the newly discovered evidence be of the sort that would probably change the jury's verdict if a new trial were granted because "there existed copious amounts of corroborating evidence to support [defendant's] conviction." The second PCR court noted, "[e]ven if Torres's trial testimony [was] found to be untruthful, there exists significant amounts of evidence elsewhere in the record to support [defendant's] conviction." A memorializing order was entered.

Defendant appealed from the denial of his first PCR petition. On July 15, 2022, we affirmed the decision denying defendant's first PCR petition. We stated:

> Here, reduced to its essence, defendant claims Torres'[s] "recantation" in his 2008 habeas petition of his involvement in the Staten Island home invasion, combined with Kadonsky's affidavits and testimony at the evidentiary hearing, are "not 'merely' cumulative, impeaching or contradictory," . . . but rather "shake[s] the very foundation of the State's case and almost certainly [would] alter the earlier jury verdict[.]" However, Torres admitted his recantation, drafted with the assistance of Kadonsky's deft hand, was itself false.

The judge found Torres credible in this regard. The judge earlier found Kadonsky was not credible in his assertion that Torres and DeJesus admitted framing defendant. Applying appropriate standards to the review of the judge's findings and conclusion following two evidentiary hearings, we find no reason to conclude defendant met the rigorous standards required to set aside "[a] jury verdict rendered after a fair trial [which] should not be disturbed except for the clearest of reasons."

While defendant's appeal of the denial of his first PCR petition was pending, he filed his second petition for PCR seeking a new trial, which is the subject of the matter under review. In his second PCR petition, defendant again reiterated he was entitled to PCR because the State violated its obligation under Brady when it failed to produce Torres's sworn habeas corpus petition. Defendant also claimed his trial counsel was ineffective by failing to uncover Torres's habeas corpus petition earlier. In defendant's second PCR reply brief, he raised new arguments under Giglio[5] and Jencks.[6]

---

[5] Giglio, 405 U.S. at 153-155 (1972) (explaining that the Supreme Court extended Brady's scope to include material evidence that would bear upon the credibility of the State's witnesses and [held] prosecution's withholding evidence affecting credibility of witnesses whose reliability may be determinative of guilt also violates due process).

[6] Jencks v. United States, 353 U.S. 657 (1957) (explaining that the Supreme Court reversed defendant['s] conviction because the trial court had refused to

On June 27, 2023, the second PCR court entered an order denying defendant's second PCR petition without an evidentiary hearing. In an accompanying comprehensive thirty-two-page written decision[7], the second PCR court concluded that defendant's <u>Brady</u> claims were procedurally barred under <u>Rule</u> 3:22-4(b)(2)(B) because it was undisputed that Torres's habeas corpus petition was discoverable sooner on PACER[8] as a publicly filed document—for over one year before defendant's trial—through the exercise of reasonable diligence. The second PCR court pointed out that "the factual predicate was already reviewed and carefully considered by this court in [defendant]'s prior PCR under the standard set forth in [<u>Carter</u>] on granting a new trial based on newly discovered evidence." The second PCR court noted:

> At this point, [defendant] is attempting to backdoor the same factual predicate behind the facade of a <u>Brady</u> claim, as opposed to the already-litigated <u>Carter</u> claim, to argue to this court that it is a never-before-seen issue. [Defendant] argues that no court has yet decided

direct the [g]overnment to produce prior reports by witnesses for use in their cross examination).

[7] The second PCR court refers to defendant's "third" PCR petition in its decision. However, based upon a review of the record, we conclude the petition to be defendant's second PCR petition.

[8] PACER stands for "Public Access to Court Electronic Records." PACER provides information about accessing and filing federal court records electronically.

whether he is entitled to a new trial based on the State's violation of its obligation to turn over Brady material prior to [defendant]'s trial. This court will note that the Carter elements have notable overlap with the Brady elements, and any other Brady factor that was not addressed in the prior PCR is encompassed by the Court Rules establishing procedural bars on PCR. In sum and substance, this court has either already decided the underlying issues that come before it now under the Brady claim, or they are procedurally barred from review by the Rules. See State v.McQuaid, 147 N.J. 464, 484 (1997) (precluding PCR review of issues that are identical or substantially equivalent to an issue litigated below on the merits). [Defendant] could have raised the Brady claim in the prior PCR along with its Carter claim but failed to do so. Accordingly, it is patently clear and already established by this court that the habeas petition could have been discovered earlier, and thus [defendant] cannot satisfy this first factor.

Notwithstanding the procedural bar, the second PCR court addressed the merits of defendant's Brady claim. Applying the first Brady element—evidence is favorable to the accused—the second PCR court determined the habeas corpus petition could not be deemed as favorable to defendant, even if the petition is considered impeachment evidence:

> [Defendant] cannot assert that Torres' habeas petition is impeachment evidence if the within statements were not even conceived by Torres[.] [I]ndeed, this can more accurately be described as a statement by Kadonsky, as he dictated to Torres how it should be written. [Defendant] argues that, if the habeas petition was disclosed to him prior to trial, then he could have used it to impeach Torres' testimony as to the Staten Island

17

home invasion. However, at this point, it has been well established that Torres did not conceive the contents of the habeas petition, Kadonsky did. [Defendant] ignores that pivotal fact in arguing that it contradicts Torres' trial testimony. Accordingly, this court does not find that it constitutes impeachment evidence and is thus not favorable within the meaning of Brady.

Applying the second Brady element—the State suppressed the evidence, either purposely or inadvertently—the second PCR court determined that since the habeas corpus petition was filed on PACER, the State was in constructive possession of the habeas petition, despite not being in the prosecutor's actual file. Finally, applying the third Brady element—the evidence is material to the defendant's case—the second PCR court determined the habeas petition was not material evidence because defendant's jury already knew that Torres did not testify truthfully yet convicted defendant regardless because the State sufficiently corroborated Torres' testimony. The habeas petition was also found not to be material evidence by the second PCR court because it would not have been admissible under N.J.R.E. 803(a)(1) as a prior inconsistent statement of Torres, as he never disclaimed knowledge of the Staten Island kidnapping and because Kadonsky conceived the contents of the petition.

18

The second PCR court also determined defendant failed to establish a prima facie Strickland/Fritz[9] claim because he did not overcome the strong presumption that his trial counsel was not deficient. The second PCR court noted that defendant did not offer sufficient evidence that "his trial counsel was so ineffective such that he rendered the idea of a fair trial meaningless" and emphasized there was plenty of corroborating evidence to support defendant's conviction.

The second PCR court determined that defendant's Jencks and Giglio claims were procedurally barred because they were raised for the first time in his reply brief instead of his second original PCR petition. Defendant's request for an evidentiary hearing was denied, and a memorializing order was entered. Defendant filed a motion for reconsideration, which was denied.

This appeal followed, with defendant presenting the following points for our consideration:

> I. [DEFENDANT] IS ENTITLED TO A NEW TRIAL BASED ON THE STATE'S FAILURE TO PRODUCE A SWORN STATEMENT THAT CATEGORICALLY UNDERMINED THE CREDIBILITY OF AN IMPORTANT STATE WITNESS.

---

[9] Strickland v. Washington, 466 U.S. 668 (1984); State v. Fritz, 105 N.J. 42 (1987).

a. THE FAILURE TO PRODUCE TORRES'[S] SWORN STATEMENT TO [DEFENDANT] CONSTITUTES A <u>BRADY</u> VIOLATION.

    i. IN ACCORDANCE WITH NEW JERSEY LAW, THE ADMISSIBILITY OF TORRES'[S] SWORN STATEMENT AT TRIAL DOES NOT IMPACT ITS STATUS AS <u>BRADY</u> MATERIAL.

        1. TORRES'[S] SWORN STATEMENT <u>WOULD</u> BE ADMISSIBLE AT TRIAL UNDER N.J.R.E. 803(a)(1).

        2. TORRES'[S] SWORN STATEMENT IS ADMISSIBLE UNDER N.J.R.E. (608).

        3. TORRES'[S] SWORN STATEMENT IS ADMISSIBLE BECAUSE HE CONCEIVED THE CONTENTS OF THE SWORN STATEMENT.

b. THE FAILURE TO PRODUCE TO [DEFENDANT] THE SWORN STATEMENT PRIOR TO HIS TRIAL CONSTITUTES <u>GIGLIO</u> AND <u>JENCKS</u> VIOLATIONS.

    i. THE FAILURE TO PRODUCE TORRES'[S] SWORN STATEMENT TO [DEFENDANT] CONSTITUTES A <u>GIGLIO</u> VIOLATION.

20 <span style="float:right;">A-3772-22</span>

ii. THE FAILURE TO PRODUCE TORRES'[S] SWORN STATEMENT TO [DEFENDANT] CONSTITUTES A <u>JENCKS</u> VIOLATION.

II. THERE EXISTS NO PROCEDURAL BAR TO THE RELIEF SOUGHT IN THE PETITION.

a. THE ISSUE BEFORE THE COURT HAS NEVER BEEN RAISED OR ADJUDICATED, NOR COULD IT HAVE BEEN RAISED OR ADJUDICATED.

i. TORRES'[S] SWORN STATEMENT WAS NOT DISCOVERABLE AT THE TIME [OF] [DEFENDANT'S] TRIAL OR APPEAL.

b. THE PETITION FOR [PCR] IS TIMELY

III. ALTERNATIVELY, [DEFENDANT] IS ENTITLED TO A NEW TRIAL BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL.

## II.

"P[CR] relief is New Jersey's analogue to the federal writ of habeas corpus." <u>State v. Pierre</u>, 223 N.J. 560, 576 (2015) (quoting <u>State v. Preciose</u>, 129 N.J. 451, 459 (1992)). [PCR] provides a "built-in 'safeguard that ensures that a defendant [is] not unjustly convicted.'" <u>State v. Nash</u>, 212 N.J. 518, 540 (2013) (quoting <u>McQuaid</u>, 147 N.J. at 482.)

"A petitioner must establish the right to [PCR] by a preponderance of the credible evidence." Preciose, 129 N.J. at 459 (citations omitted). "Our standard of review is necessarily deferential to a PCR court's factual findings. . . . [However,] we need not defer to a PCR court's interpretation of the law; a legal conclusion is reviewed de novo." Nash, 212 N.J. at 540-41.

"A petitioner is generally barred from presenting a claim on PCR that could have been raised at trial or on direct appeal, R. 3:22-4(a), or that has been previously litigated, R. 3:22-5." Id. at 546. Rule 3:22-5 provides:

> A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule . . . .
>
> [R. 3:22-5.]

"PCR will be precluded 'only if the issue is identical or substantially equivalent' to the issue already adjudicated on the merits." State v. Afanador, 151 N.J. 41, 51 (1997) (citing McQuaid, 147 N.J. at 482 (quoting Picard v. Connor, 404 U.S. 270, 276-77 (1971))).

Second or subsequent PCR petitions must comply with the requirements of Rule 3:22-4(b) and Rule 3:22-12(a)(2). Rule 3:22-4(b) explains that a subsequent petition for [PCR should] be dismissed unless:

(1) it is timely under R. 3:22-12(a)(2); and

(2) it alleges on its face either:

> (A) that the petition relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New Jersey, that was unavailable during the pendency of any prior proceedings; or

> (B) that the factual predicate for the relief sought could not have been discovered earlier through the exercise of reasonable diligence, and the facts underlying the ground for relief, if proven and viewed in light of the evidence as a whole, would raise a reasonable probability that the relief sought would be granted; or

> (C) that the petition alleges a prima facie case of ineffective assistance of counsel that represented the defendant on the first or subsequent application for [PCR].

"[N]o second or subsequent petition shall be filed more than one year after . . . the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence. . . ." R. 3:22-12(a)(2)(B). The one-year time limitation for second or subsequent petitions is non-relaxable. R. 3:22-12(b). Rule 3:22-4(b)(1) requires dismissal of a second or subsequent petition if not timely under Rule 3:22-12(a)(2).

23

"[T]rial courts ordinarily should grant evidentiary hearings to resolve ineffective-assistance-of-counsel claims if a defendant has presented a prima facie claim in support of [PCR]." Preciose, 129 N.J. at 462. "[C]ourts should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim." Id. at 462-63.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants a right to the assistance of counsel. State v. Gideon, 244 N.J. 538, 549 (2021). The right to counsel includes "the right to the effective assistance of counsel." Nash, 212 N.J. at 541 (quoting Strickland, 466 U.S. at 686).

In Strickland, the Court established a two-part test, later adopted as applicable under the New Jersey Constitution in Fritz, 105 N.J. at 58, to determine whether a defendant has been deprived of the effective assistance of counsel. Strickland, 466 U.S. at 687. Under the first prong of the Strickland standard, a petitioner must show that counsel's performance was deficient. Ibid. It must be demonstrated that counsel's handling of the matter "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid.

Under the "second, and far more difficult prong of the" <u>Strickland</u> standard, a defendant "must show that the deficient performance prejudiced the defense." <u>Gideon</u>, 244 N.J. at 551 (quoting <u>Preciose</u>, 129 N.J. at 463). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 550-51 (alteration in original) (quoting <u>Strickland</u>, 466 U.S. at 694).

Proof of prejudice under <u>Strickland</u>'s second prong "is an exacting standard." <u>Id.</u> at 551 (quoting <u>State v. Allegro</u>, 193 N.J. 352, 367 (2008)). A defendant seeking PCR "must affirmatively prove prejudice" satisfying the second prong of the <u>Strickland</u> standard. <u>Ibid.</u> (quoting <u>Strickland</u>, 466 U.S. at 693).

To prevail on a PCR petition, a defendant must establish both prongs of the <u>Strickland</u> standard. <u>Strickland</u>, 466 U.S. at 687; <u>Nash</u>, 212 N.J. at 542. A failure to satisfy either prong of the <u>Strickland</u> standard requires the denial of a PCR petition founded on an ineffective assistance of counsel claim. <u>Strickland</u>, 466 U.S. at 700. "With respect to both prongs of the <u>Strickland</u> test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving

25

his or her right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012).

The State has a "constitutional obligation to provide criminal defendants with exculpatory evidence in the State's possession[.]" State v. Marshall, 148 N.J. 89, 154 (1997). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." State v. Knight, 145 N.J. 233, 245 (1996) (quoting Brady, 373 U.S. at 87). In order to make a Brady claim, a defendant must show three criteria: "(1) the prosecution suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material." State v. Martini, 160 N.J. 248, 268-69 (1999) (citing Moore v. Illinois, 408 U.S. 786, 794-95 (1972)).

As to the first factor, the "disclosure rule applies to information of which the prosecution is actually or constructively aware." State v. Nelson, 330 N.J. Super. 206, 213 (App. Div. 1998) (citing Kyles v. Whitley, 514 U.S. 419, 437-38 (1995)). The lack of actual awareness does not relieve the State of its Brady obligations because the prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf. Kyles, 514 U.S. at 437-38; see also State v. Nelson, 155 N.J. 487, 499 (1998).

The second Brady factor is often presumed, and few courts have considered exactly what must be shown in order to establish that withheld evidence is favorable to the defendant. Evidence found to be favorable has generally involved information that impeaches the testimony of a government witness. See State v. Henries, 306 N.J. Super. 512, 533 (App. Div. 1997). Favorability is not limited to impeachment, however, and it has been recognized in cases where evidence simply bolsters a defendant's claims. See Nelson, 155 N.J. at 497.

The third Brady factor involves the materiality of the evidence that was withheld. "[E]vidence is material for Brady purposes 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Marshall, 148 N.J. at 156 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Nelson, 155 N.J. at 500 (quoting Bagley, 473 U.S. at 682). As our Supreme Court has stated:

> "[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." Rather, the question is whether in the absence of the undisclosed evidence the

27

defendant received a fair trial, "understood as a trial resulting in a verdict worthy of confidence."

[Ibid. (alteration in original) (citation omitted) (quoting Kyles, 514 U.S. at 434).]

In applying the materiality test "where a conviction has followed a full trial, we assess the strength of the State's case, and determine whether introduction of the suppressed evidence would probably have changed the jury's verdict." State v. Parsons, 341 N.J. Super. 448, 455 (App. Div. 2001) (citation omitted).

Whether non-disclosure of evidence violates Brady is a mixed question of law and fact, where the lower court's decision concerning the materiality of the evidence merits deference. Marshall, 148 N.J. at 185-86. We do not defer, however, where the trial court did not analyze the claim under the correct legal standard. Id. at 185. We next apply these foundational principles to the matter before us.

A.

From the onset, we conclude Rule 3:22-4(b)(2)(B) precludes PCR to defendant. In order to defeat the procedural bar, defendant would need to demonstrate that (1) Torres's habeas corpus petition was not discoverable earlier through reasonable diligence; and (2) the statements contained in the habeas

corpus petition, if proven, would raise a reasonable probability that the <u>Brady</u> claim would be granted.

On appeal, defendant argues he did not have access to PACER as a pretrial detainee in a county jail. We reject this argument because defendant's attorney could have obtained the habeas corpus petition via PACER or as a publicly filed document. Moreover, defendant's contention that PACER was not readily available or prominently used seventeen years ago is misguided because PACER has been in use for over twenty years. <u>See</u> <u>About Us</u>, PACER, https://pacer.uscourts.gov/about-us (last visited Nov. 13, 2024).

Indeed, the habeas corpus petition was known to defendant when he filed his first PCR petition as evidenced in the April 28, 2017 letter brief filed on his behalf in support of PCR where the habeas corpus petition is mentioned. Therefore, based upon our de novo review, the second PCR court correctly found that defendant failed to satisfy the first <u>Rule</u> 3:22-4(b)(2)(B) factor because the habeas corpus petition was discoverable sooner through the exercise of due diligence.

Defendant also failed to establish the second <u>Rule</u> 3:22-4(b)(2)(B) factor because he has not raised a reasonable probability that the relief sought would be granted if proven in light of the evidence as a whole. In addition, in our

opinion denying defendant's first PCR, we rejected his argument that the habeas corpus petition entitles him to a new trial as it did not substantially impact defendant's culpability, rather, the false statements would go to Torres's culpability. Tairi II, slip op. at 6-7.

We similarly reject defendant's argument that no court has yet to decide whether he is entitled to a new trial based on the precedent established in Brady because it is "identical to or substantially equivalent," State v. Afanador, 151 N.J. 41, 51 (1997), to the arguments addressed in his first PCR. Therefore, we are satisfied that defendant failed to sustain his prima facie right to PCR or right to a new trial.

## B.

Notwithstanding the procedural bar to defendant's Brady claim, we will address the merits. As to the first Brady factor, we will assume the State had an obligation to produce Torres' habeas petition.

As to the second Brady factor, the statements contained in Torres' habeas corpus petition would not have been admissible at trial because Torres did not prepare the habeas corpus petition, in conceiving the arguments—Kadonsky did, as confirmed by both Torres's and Kadonsky's sworn testimony. Therefore, the second PCR court properly found that the purported evidence could not be used

as intended by defendant—to impeach Torres's testimony about the Staten Island home invasion—and therefore, was not favorable within the meaning of Brady.

Applying the third Brady factor, the context of the record disfavored materially. Our Supreme Court has directed us to consider "the strength of the State's case, the timing of disclosure of the withheld evidence, the relevance of the suppressed evidence, and the withheld evidence's admissibility" when analyzing whether new evidence is considered material under Brady. State v. Brown, 236 N.J. 497, 519 (2019).

Even in the absence of Torres's testimony, there was other sufficient corroborating evidence to support defendant's conviction, as noted in Tairi I; details provided by the victims of the crimes, other physical evidence, and Melton's testimony, which circumstantially established defendant's involvement in the criminal enterprise. Tairi I, slip op. at 24-26.

Moreover, we previously held that "[u]nlike in Nash, where the case was essentially a credibility contest . . . , in this case there exists copious amounts of corroborating evidence to support [defendant]'s conviction. Nash, 212 N.J. at 543-544. Whereas the defendant's conviction in Nash, was premised on the testimony of one individual, [defendant]'s conviction was supported by a robust

record of evidence." Thus, we conclude, based upon our de novo review, that Torres's petition was not material under <u>Brady</u>.

Further, the second PCR court correctly determined that Torres's habeas corpus petition would be inadmissible under N.J.R.E. 803(a)(1), which requires a prior statement offered by an adversary to be inconsistent with the witness's trial testimony. <u>See</u> <u>State v. Caraballo</u>, 330 N.J. Super. 545, 556 (App. Div. 2000) (explaining that a prior statement is "inconsistent" when it deviates from what the witness asserted on the stand). Contrary to defendant's assertion, Torres's habeas corpus petition never stated he had no knowledge of the Staten Island incident.

Rather, it merely stated his trial counsel ignored his request to investigate claims that DeJesus would have submitted an affidavit explaining he had no knowledge of the incident. Torres confirmed this interpretation of his habeas corpus petition when he testified at the July 21, 2021 evidentiary hearing. The second PCR court correctly reasoned that "an impeachable contradiction of that statement would be Torres testifying at trial that his trial counsel did <u>not</u> ignore his requests to investigate those claims." Consequently, the statement is not inconsistent, let alone material. Based upon our de novo review, defendant failed to establish a prima facie <u>Brady</u> claim.

32

## C.

Next, defendant argues he is entitled to a new trial based on ineffective assistance of counsel. Specifically, defendant contends that "if the [c]ourt finds that defendant's counsel had the ability or opportunity to obtain [the habeas corpus petition] through alternative means, then [he] was deprived of his [d]ue [p]rocess right to constitutionally effective assistance of counsel." The State contends that defendant's argument is both procedurally barred under Rule 3:22-4(b)(2)(B) and substantially meritless. We agree.

Defendant is procedurally barred from raising the ineffective assistance of counsel argument because he had the opportunity to raise this issue in his first PCR petition but failed to do so.

In the context of PCR, a defendant is entitled to an evidentiary hearing if the defendant demonstrates "a prima facie case in support of [PCR], a determination by the court that there are material issues of fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief." State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)). The mere raising of a claim for PCR, however, does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.

1999). Rather, as a threshold matter, before a trial court grants an evidentiary hearing, it should determine whether the defendant has presented a claim for ineffective assistance of counsel; material issues of disputed facts are outside the record; and resolution of the issues necessitates a hearing. R. 3:22-10(b). When making such a determination, the PCR court must consider the facts in a light favorable to the defendant. Preciose, 129 N.J. at 462-63.

"A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim . . . will ultimately succeed on the merits.'" Porter, 216 N.J. at 355. In other words, when claiming ineffective assistance of counsel, "a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170. If the "allegations are too vague, conclusory, or speculative," then an evidentiary hearing is not warranted. Marshall, 148 N.J. at 158.

Applying these principles to the matter before use, we are convinced defendant failed to establish a prima facie right to PCR based on ineffective assistance of counsel. While defense counsel admittedly did not discover Torres's habeas corpus petition, the jury heard Torres testify, considered the inconsistencies in his testimony, and still found defendant guilty of the crimes

34

charged. Further, the second PCR court duly pointed that, "[t]he alleged failure of [defendant]'s trial counsel to trial counsel to uncover one statement within an eight-page document which . . . would have had little impact on the trial does not rise to the level of constitutional deficiency within the meaning of Strickland/Fritz[.]" Therefore, defendant failed to satisfy the first Strickland/Fritz prong.

Defendant also failed to satisfy the second Strickland/Fritz prong because he did not present evidence establishing a reasonable probability that but for counsel's alleged error in failing to discover Torres's habeas corpus petition, the result of his trial would have been different.

To the effect we have not addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

35

A-3772-22